<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTHONY E. STEVENSON,      :
                                :     Civil Action No. 13-5953 (MAS)
                                :
         Plaintiff,         :
                                :
          v.             :     **OPINION**
                                :
THE COUNTY SHERIFF'S OFFICE  :
OF MONMOUTH, et al.,       :
                                :
        Defendants.     :

**APPEARANCES:**

      ANTHONY E. STEVENSON, Plaintiff <u>pro</u> <u>se</u>
      Monmouth County Correctional Institution
      One Waterworks Road
      Freehold, New Jersey 07728

**SHIPP**, District Judge

    Plaintiff, Anthony E. Stevenson, a state inmate confined at the Monmouth County Correctional Institution in Freehold, New Jersey, at the time he filed this Complaint, seeks to bring this action *in forma pauperis*.  Based on his affidavit of indigence and prison account statement, the Court will grant Plaintiff's application to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint accordingly.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious,

for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be allowed to proceed against the two Defendant Sheriff Officers, Leonard Maxfield and D. Herrmann, as to the claim asserting unreasonable use of force. All other claims and Defendants shall be dismissed at this time.

## I. BACKGROUND

Plaintiff, Anthony E. Stevenson ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, Eighth and Fourteenth Amendment rights. Plaintiff names the following numerous Defendants in this matter: the County Sheriff's Office of Monmouth; Sheriff Shawn Golden; Sergeant Vincent Giglio; Sheriff Officers Leonard Maxfield, D. Herrmann, K. O'Neill and R. Fuller; the County Jail of Monmouth; Warden Barry Nadrowski; Captain Shawn Althouse; Sergeant Jack Hausman; Court Line Woman #1 and #2; Correct Care Solutions Medical Providers; Medical Director Dr. Hashman (later identified as Dr. Hashmi, *see* ECF Nos. 3, 4); Nurse Practitioner "C.J."; the Monmouth County E.M.T. Response Service; and E.M.T. Technician #1 and #2, later identified as Drew Lumbar and Shawn Sprance (*see* ECF No. 2). (ECF No. 1, Complaint at Caption, ¶¶ 3-6.)

Plaintiff alleges that, on July 30, 2013, he was transported to the Monmouth County Court House by the Monmouth County Sheriff's Office, where he was placed in a holding cell in handcuffs. As the Sheriff Officers began to remove the handcuffs from all of the prisoners, Officer Fuller asked Plaintiff if he was the same person who Fuller had argued with a month earlier. Plaintiff responded yes, and Fuller asked if there would be any further problems, to which Plaintiff answered no. Sgt. Giglio then said to Plaintiff, "So you're not going to be the tough wise ass today, huh?" "So we don't have to put you in one of the isolation cells?" Again,

2

Plaintiff answered no, and put his hands up, saying "you win I want no problems." (*Id.*, ¶¶14-18.)  Plaintiff further remarked to Giglio, "Plaintiff give you my Scouts honor [sic] you will have no problem out of the Plaintiff."  Plaintiff then saluted Giglio twice. (*Id.* at ¶ 19.)

Plaintiff also alleges that Officer O'Neill reacted to Plaintiff's conduct by telling him he was a "wise guy" and threatening him with the isolation cell.  The Sheriff Officers then placed Plaintiff in an isolation cell, and taunted him by calling him "obscene" names, to which Plaintiff responded in kind. (*Id.*, ¶¶ 20, 21.)

Plaintiff next alleges that, when it was time for him to go to the Courtroom for Child Support, Officer Fuller put Plaintiff in shackles and handcuffs, and made the shackles so tight that Plaintiff could not walk.  Each step taken by Plaintiff cut into Plaintiff's ankles.  When Plaintiff complained to Defendants Herrmann and Maxfield, Maxfield asked Plaintiff if he was refusing to go to court.  Herrmann and Maxfield exchanged words with Plaintiff, and then Herrmann grabbed the belt around Plaintiff's waist, which connected the handcuffs to the leg shackles, and flung Plaintiff to the floor and dragged him.  Plaintiff banged his head on the lower part of the door frames when being dragged.   Plaintiff also felt "excruciating pain in his [lower] back" and his "legs were numb." (*Id.*, ¶¶ 22-30.)

Plaintiff notes that he had major surgery on his lower back in February 2011. (*Id.*, ¶ 31.)

Plaintiff complained to the Sheriff Officers about the pain and numbness, but they continued to drag Plaintiff to the isolation cell where they left him lying on the floor still in handcuffs and shackles.  Plaintiff alleges that Fuller, Giglio and Maxfield came to the cell every five to ten minutes to ask Plaintiff if he could get up on his own.  Plaintiff asked for medical help, but the Officers accused Plaintiff of "faking" his injury and told Plaintiff that he would have to sit up before they would call for medical attention.  Plaintiff told Maxfield that he could

3

not sit up and that he was in excruciating pain and his legs were numb.  Plaintiff remained shackled.  (*Id.*, ¶¶ 32-39.)

Giglio then came to Plaintiff's cell to tell Plaintiff that Giglio had reviewed the videotape of the incident, and that the video footage showed that Plaintiff fell down on his own.  Giglio told Plaintiff that he would remain in the isolation cell until 4:30 p.m., until Plaintiff stopped faking his injury.  (*Id.*, ¶ 40.)

Plaintiff alleges that after five to ten minutes, O'Neill and Fischer returned to the isolation cell to remove Plaintiff's shackles and handcuffs because paramedics were coming. Defendant EMT Technician #1 took Plaintiff's blood pressure and asked about Plaintiff's injury. Plaintiff told him about the pain and his prior back surgery.  EMT Technician #1 asked Plaintiff to sit up or move his legs, but Plaintiff could not do so without pain.  The Technician then told Plaintiff that he would be transported to the hospital.  At this point, however, Giglio allegedly intervened and told the Technician that Plaintiff could not go to the hospital because he had tried to escape from the hospital in the past while in Sheriff's custody.  (*Id.*, ¶¶ 41-47.)

Plaintiff refuted Giglio's accusation, but the EMT Technician #1 allegedly deferred to the Sheriff Officer's decision.  Giglio told the EMT Technician that Plaintiff would be treated by the medical staff at the jail.  The Technician agreed to escort Plaintiff back to the jail in the Sheriff's transit van.  Plaintiff alleges that the Sheriff Officers "manhandled" him while loading Plaintiff in and out of the van, throwing Plaintiff in the front row of the van while Plaintiff was in "enormous amounts of pain." (*Id.*, ¶¶ 48-54.)

When Plaintiff arrived at the jail, the medical staff had a gurney and flat board to move Plaintiff from the van.  Plaintiff alleges that a male nurse tried to force the flat board under Plaintiff despite resistance due to the belt around Plaintiff's waist attached to his handcuffs.

Plaintiff further alleges that the male nurse shoved the board back and forth causing Plaintiff "unbearable and indescribable amounts of pain." (*Id.*, ¶¶ 55-56.)

Plaintiff next alleges that Giglio taunted Plaintiff, saying that Plaintiff can't sue because Plaintiff fell down on his own. Giglio also allegedly told the medical staff "no hospital." (*Id.*, 57-58.) Plaintiff was examined by Dr. Hashmi, who ordered that Plaintiff be given a "shot of a painkiller" and be placed in the infirmary. (*Id.* at ¶ 59.)

On July 31, 2013, Plaintiff's defense counsel wrote to Monmouth County Jail Warden Barry Nadrowski, requesting that Plaintiff be sent to the hospital for treatment of his back injury. That same day, Defendant Male Nurse "C.J." examined Plaintiff and gave Plaintiff a walker. Plaintiff alleges that Nurse C.J. told Plaintiff he was "faking." Nurse C.J. also told Plaintiff that decisions regarding x-rays, MRIs and a back specialist are made by Dr. Hashmi. (*Id.*, ¶¶ 60-63.)

On July 31, 2013, Plaintiff's defense attorney and his fiancée came to visit Plaintiff. Plaintiff alleges that he could not leave the infirmary and no visits were permitted in the infirmary. (*Id.*, ¶¶ 64, 65.)

On July 31, 2013, Plaintiff received notice of two disciplinary charges filed by Giglio, charging Plaintiff with Conduct which Disrupts and Using Abusive Language. Plaintiff alleges that he received notice of the charges more than 24 hours after the charges were written. He alleges that the charges had to be "thrown out." (*Id.*, ¶¶ 66-68.)

On August 1, 2013, Plaintiff alleges that he was made to "self-get up and use the walker," despite numbness in his legs. Dr. Hashmi also came to the infirmary and told Plaintiff that he would be released because he had a court hearing on August 2, 2013. When Plaintiff asked Dr. Hashmi about medical treatment, the doctor responded that he had not made any decisions yet.

5

Plaintiff then was transferred from the infirmary to a detention tier on August 1, 2013. (*Id.*, ¶¶ 69-73.)

On August 2, 2013, Plaintiff was escorted to court by Sheriff Officers O'Neill, Fischer and John and Jane Doe. The escort was video-taped. That same day, on his return to jail, Plaintiff was called to the Sergeants' Office at Monmouth County Jail, where Sgt. Hausman and Sgt. Halle were waiting for him. Plaintiff alleges that both Hausman and Halle insisted that Plaintiff "cop out" to 10 days for the incident that occurred at the Courthouse on July 30, 2013. Plaintiff refused and was told that he would be going to "J-pod today doing fifteen (15) days!"[1] (*Id.*, ¶¶ 75-78.)

Plaintiff returned to his cell to start packing when he was brought back to the Sergeant's Office for "Court line." Sgt. Hausman allegedly told Plaintiff he would give him another chance to take the 10 days or go straight to J-pod for 15 days. Two women were present for the court line procedure. They told Plaintiff that they had viewed the video-tape of the incident and that Plaintiff was guilty. Plaintiff alleges that he told them he did not receive notice of the charges until about 30 hours after the charges were written and that institutional charges could not be imposed against Plaintiff for something that occurred at the Courthouse. The women allegedly told Plaintiff that they did not care about the regulations, and they found Plaintiff guilty of the institutional charges. Plaintiff was told he would serve 15 days in J-pod immediately. (*Id.*, ¶ 79.)

On August 3, 2013, Sgt. Hausman allegedly asked Plaintiff why he didn't admit the charges and take the 10 days. When Plaintiff told Sgt. Hausman it violated his Constitutional

_____

[1] Plaintiff does not define "J-pod" in his Complaint, but it appears to be a term for disciplinary detention.

rights to do so, Sgt. Hausman allegedly threatened Plaintiff that he could make it "hell" for Plaintiff in lock up.  Plaintiff's pain medication for Altrum ran out on August 3, 2013.  (*Id.*, ¶¶ 81-82.)

On August 4, 2013, Plaintiff filed a grievance with Captain Althouse regarding the disciplinary charges and court line sanction.  He also filed a grievance concerning the medical department's delay in sending Plaintiff to a "proper professional" for his back injury.  On August 6, 2013, Plaintiff filed an appeal of the disciplinary matter with Captain Althouse.  (*Id.*, ¶¶ 83-85, 89.)  On August 6, 2013, Plaintiff wrote to Monmouth County Sheriff Shawn Golden asking that he preserve the video footage of the incident that occurred at the Courthouse on July 30, 2013.  Plaintiff also wrote to the Warden's Office at the Monmouth County Jail, asking that the video footage of Plaintiff's arrival at the jail on July 30, 2013, be preserved.  On August 6, 2013, Plaintiff wrote to the Division of Criminal Justice, Internal Affairs Section in Trenton, New Jersey, complaining about the disciplinary matter. (*Id.*, ¶¶ 86-88.)

Dr. Hashmi prescribed Motrin for Plaintiff's back pain on August 7, 2013.  Plaintiff alleges that Dr. Hashmi still had not made a decision to send Plaintiff for an MRI, x-rays or professional consultation. (*Id.*, ¶ 90.)

On August 8, 2013, Plaintiff filed an appeal from the court line disciplinary finding on the form sent to him by Captain Althouse.  Captain Althouse informed Plaintiff that the matter was referred to the investigation unit for review.  On August 9, 2013, Plaintiff filed an appeal regarding Captain Althouse's response. (*Id.*, ¶¶ 91-94.)

On August 11, 2013, Plaintiff complained to the Nurse that the Motrin prescribed by Dr. Hashmi was not helping his back pain.  Plaintiff also requested the Nurse to tell Dr. Hashmi that Plaintiff need to see a back specialist.  On August 13, Plaintiff filed a grievance with Captain

Althouse asking for an evaluation by a back specialist.  Plaintiff received a response to his grievance on August 21, 2013, from Melanie Volker, A.H.S.A.  (*Id.*, ¶¶ 95-97, 99.)  Plaintiff does not provide any information regarding Ms. Volker's response.

Plaintiff was released from J-1 lock-up on August 17, 2013.  On August 21, 2013, Plaintiff was assigned a job cleaning the steps in his housing unit.  Plaintiff alleges that he could not clean the steps because it caused him excruciating pain in his back when bending over.  On August 22, 2013, Plaintiff was assigned the task of mopping the third floor.  Again, Plaintiff could not perform his duty without experiencing pain in his back.  He alleges that another inmate finished mopping the floor for Plaintiff after witnessing Plaintiff's pain.  On August 23, Plaintiff quit his cleaning job due to his back injury.  (*Id.*, ¶¶ 98, 100, 102-103.)

On August 22, 2013, Dr. Hashmi prescribed Tylenol for Plaintiff's pain and allegedly told Plaintiff that he would follow up with Plaintiff's progress in two weeks.  On August 23, 2013, Plaintiff filed a grievance with Dr. Hashmi concerning the pain he experienced from the cleaning jobs and asked that he be referred to a back specialist.  (*Id.*, ¶¶ 101, 104.)

Following the filing of his Complaint, referenced below, Plaintiff filed additional submissions with the Court that include more facts regarding his medical treatment.  On March 31, 2014, Plaintiff wrote the Court and attached two letters he had written to Dr. Hashmi and Warden Nadrowski on March 21, 2014.  (ECF Nos. 3, 3-1.)  The letters confirm that Plaintiff had been sent to General Hospital in East Orange, New Jersey for an MRI, but was informed that a CT scan needed to be scheduled and performed first to determine if Plaintiff had any metal in his back from his prior surgery.  (*Id.*)  On April 29, 2014, Plaintiff again wrote to the Court and attached two more letters he had written to the East Orange Hospital and Warden Nadrowski on April 18, 2014.  (ECF No. 4.)  These letters state that a CT scan was performed and showed no

metal in Plaintiff's back. The letters further state that Dr. Hashmi told Plaintiff that the CT scan showed no injury to Plaintiff's back and that the CT scan was an alternative test in place of an MRI. (*Id.*) A third letter, dated April 17, 2014, was written to Dr. Hashmi in which Plaintiff states that he is experiencing continuing pain and asked about the status of his MRI. (*Id.*)

Plaintiff continued to send letters to the Court attaching his correspondence to Dr. Hashmi. For instance, he attaches a letter written to Dr. Hashmi on July 4, 2014, in which Plaintiff admits he had seen the doctor on May 19, 2014 and May 23, 2014 for his back injury and was told that he had herniated discs and arthritis, and that it was unlikely that a neurosurgeon would operate on Plaintiff a second time. In the letter, Plaintiff also states that Dr. Hashmi had said he would look into Plaintiff's MRI. (ECF No. 5.) On July 24, 2014, Plaintiff again wrote to Dr. Hashmi to inquire about the status of his MRI. The letter states that Dr. Hashmi had told Plaintiff the CT-scan confirmed that Plaintiff had a couple of herniated discs, which allegedly corroborates his complaints of pain. (ECF No. 7-1.) Most recently, Plaintiff forwarded to the Court a letter that he wrote to Dr. Hashmi, dated August 11, 2014, complaining that the prescription for Elavil does not help and that Plaintiff needs an MRI. (ECF No. 8.)

In Counts I,II, III, VI and VII of his Complaint, Plaintiff asserts that Defendants Herrmann, Maxfield and other Sheriff Officers used excessive and unreasonable force against Plaintiff in violation of his constitutional rights, as well as asserting a common law claim of assault and battery. (*Id.*, ¶¶ 105-107, 111-113, 120-122.) Plaintiff also asserts that the Monmouth County Sheriff's Office permitted and tolerated a pattern and practice of unreasonable use of force by Sheriff's Officers by maintaining a cursory and untimely investigation and system of review of the officers' conduct that enabled the officers to use excessive and unreasonable force without repercussion. (*Id.*, ¶¶ 108-110.).

In Count IV, Plaintiff alleges that all named Defendants are liable to him for covering up and enabling the use of excessive force by the Monmouth County Sheriff Officers, and preventing Plaintiff from receiving prompt medical treatment for his injuries sustained in the assault by the Sheriff Officers.  (*Id.*, ¶¶ 114-118.)  In Count V, Plaintiff further alleges that Defendants participated in a conspiracy to violate Plaintiff's civil rights.  (*Id.*, ¶ 119.)

Next, in Counts VIII and IX, Plaintiff asserts that Defendants Giglio, Maxfield, Herrmann, O'Neill and Fuller are liable to him for intentional infliction of emotional distress. (*Id.*, ¶¶ 123, 124.)  Plaintiff also asserts that Defendants Monmouth County Sheriff's Office, Monmouth County Jail, Monmouth County E.M.T. Service, and the Correct Care Solution Medical providers are liable to Plaintiff under the theory of *respondeat superior*.  (*Id.*, Counts X and XI at ¶¶125-130.)

In Counts XII through XVI, Plaintiff alleges that Defendants Maxfield and Herrmann are liable to him for negligence, and that Defendants Monmouth County Sheriff's Office, Monmouth County Jail, Monmouth County E.M.T. Service, and the Correct Care Solution Medical providers are liable to Plaintiff for the negligent acts of Defendants Maxfield and Herrmann under the theory of *respondeat superior*.  (*Id.*, ¶¶ 131-148.)

In Count XVII, Plaintiff further asserts that Defendants Sheriff Golden, Sgt. Giglio, Officers Maxfield, Herrmann, O'Neill and Fuller, Warden Nadrowski, Captain Althouse, Sgt. Hausman and Court Line Woman #1 and #2 are liable to Plaintiff on claims of malicious abuse of process and false imprisonment.  (*Id.*, ¶¶149-151.)

Plaintiff finally asserts that he was denied medical care in violation of his Constitutional rights.  (*Id.*, ¶ 105, Count XVIII at ¶ 152.)

II. <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. Specifically, the PLRA directs the district court to screen the complaint for cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Citing its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 676). *See also Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) ("The touchstone of the pleading standard is plausibility. ... "[A]llegations that are no more than conclusions are not entitled to the assumption of truth; ... [a court should] "look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'") (citations omitted). In short, "[a] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."

*Fowler*, 578 F.3d at 211 (citing *Iqbal*, 556 U.S. at 678-79).  Thus, while pro se pleadings are liberally construed, *Higgs v. Atty. Gen.*, 655 F.3d 333, 339 (3d Cir. 20011), "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).  Nonetheless, courts must be cognizant that the *Iqbal* standard "is not akin to a probability requirement." *Covington v. International Association of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

## III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV.  <u>DISCUSSION</u>

### A.  <u>Excessive Force Claim</u>

As a pretrial detainee, Plaintiff's excessive force claim is generally analyzed under the Fourteenth Amendment Due Process Clause. *See Bistrian*, 696 F.3d at 367 (holding that a pretrial detainee "awaiting sentencing must look to either the Fifth Amendment's or the

Fourteenth Amendment's Due Process Clause for protection" on an excessive force claim).  To establish a claim for use of excessive force in violation of the Due Process Clause of the Fourteenth Amendment, Plaintiff must show that the force used was applied "maliciously and sadistically to cause harm" and not "in a good-faith effort to maintain or restore discipline." *Baez v. Lancaster County*, 487 F. App'x 30, 32 (3d Cir. 2012) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  In making this inquiry, the Supreme Court has highlighted five factors: "(1) the need for the application of the force;" (2) "the relationship between the need and the amount of force that was used;" (3) "the extent of the injury inflicted;" (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them;" and (5) "any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  *See also Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000); *Drumgo v. Brown*, 525 F. App'x 125, 128 (3d Cir. 2013) (per curiam) (applying the same standard enunciated in Eighth Amendment cases to excessive force claims by pretrial detainees).

Under this standard, the Court finds that Plaintiff has pled sufficient facts, if true, to allow this case to proceed at this time against Defendants Maxfield and Herrmann for their alleged use of excessive force against Plaintiff.  Plaintiff alleges that Maxfield and Herrmann threw Plaintiff to the floor while handcuffed and shackled, and then dragged Plaintiff, causing Plaintiff to bang his head on the door frame and sustain an injury to his back.  Plaintiff does not allege that he resisted the officers in any way to warrant their rough handling of Plaintiff in this manner. Therefore, this claim regarding the unconstitutional use of excessive force in violation of the Fourteenth Amendment shall proceed against Defendants Maxfield and Herrmann at this time.

Likewise, Plaintiff's common law claims against these two Defendants, namely, assault and battery and negligence, also shall proceed as the claims are inextricably related to the excessive force claim, and the Court will exercise supplemental jurisdiction over these claims accordingly, pursuant to 28 U.S.C. § 1367(a).

B. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff also alleges that Defendants Maxfield, Herrmann, Giglio, O'Neill and Fuller are liable to him under a common law claim of intentional infliction of emotional distress ("IIED"). A plaintiff must prove four elements to establish a claim for IIED under New Jersey law. Plaintiff must show "(1) that defendant acted intentionally or recklessly; (2) that defendant's conduct was extreme and outrageous; (3) that defendant's actions were the proximate cause of the plaintiff's distress; and (4) that the emotional distress suffered by the plaintiff was severe." *Hill v. New Jersey Dep't of Corr. Comm'r Fauver*, 342 N.J. Super. 273, 297 (N.J. Super. A.D. 2001) (citing *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366, 544 A.2d 857 (1988)).

Here, Plaintiff fails to allege facts sufficient to satisfy any of the elements of an IIED claim. Instead, he makes conclusory allegations concerning the elements of such a claim, which are inadequate to state a plausible claim for relief. For instance, Plaintiff has alleged no facts to show that he has actually suffered any severe emotional distress. He does not allege that any doctor or other medical or mental health professional indicated that Plaintiff has suffered severe emotional distress. Under New Jersey law, in an IIED case, the resulting distress must be "so severe that no reasonable man could be expected to endure it." *Buckley*, 111 N.J. at 366–67 (citing Restatement (Second) of Torts § 46, comment j). It is not sufficient for a party to merely assert that he or she has suffered distress, or even to describe symptoms such as aggravation, headaches, or difficulty sleeping. *See Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 26

14

(N.J. Super. A.D. 2001) (citing *Taylor v. Metzger*, 152 N.J. 490, 515 (1998)).  For this reason, Plaintiff's IIED claim is dismissed without prejudice as against all named Defendants, for failure to state a claim at this time.[2]

C.  Conspiracy Claim

To demonstrate the existence of a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, 528 F. App'x 136 (3d Cir. 2013) (internal citations omitted).  To plead a conspiracy claim properly, a plaintiff must allege "facts that plausibly suggest a meeting of the minds." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010).  The complaint must not plead merely a "conclusory allegation of agreement at some unidentified point." *Twombly*, 550 U.S. at 557.  The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotations and citations omitted).  To state a claim under § 1986, a plaintiff must show:

---

[2] This dismissal is without prejudice to Plaintiff filing an amended Complaint to cure the deficiencies of his pleading as discussed in this Opinion.  Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  *See West Run Student Housing Associates, LLC v. Huntington National Bank*, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. April 4, 2013) (collecting cases).  *See also* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2008).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  *Id.*  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  *Id.*

"(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clack v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994).

Plaintiff has alleged no facts to support a conspiracy claim. He simply states in a conclusory manner that all defendants conspired to deprive him of his rights with respect to an alleged cover-up of the Courthouse incident and the deprivation of medical treatment for his alleged back injury. Therefore, all conspiracy claims are dismissed as against all named Defendants, for failure to state a claim at this time. This dismissal is without prejudice to Plaintiff seeking leave to amend his Complaint to address or cure the deficiencies as noted in this Opinion. *See* this Opinion, *supra* at fn. 1.

D.  Abuse of Process and False Imprisonment Claims

Plaintiff further asserts that Defendants Sheriff Golden, Sgt. Giglio, Officers Maxfield, Herrmann, O'Neill and Fuller, Warden Nadrowski, Captain Althouse, Sgt. Hausman and Court Line Woman #1 and #2 are liable to Plaintiff on claims of malicious abuse of process and false imprisonment. A § 1983 claim asserting malicious abuse of process lies where "prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Jennings v. Shuman*, 567 F.2d 1213, 1217 (1977). *See also Rose v. Bartle*, 871 F.2d 331, 350 n. 17 (3d Cir. 1989), quoted in *Boldrini v. Wilson*, No. 13–1812, 2013 WL 5663874, *3 n. 1 (3d Cir. 2013). "To establish such a claim, there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." *Ference v. Twp. of Hamilton*, 538 F. Supp.2d 785, 798 (D.N.J. 2008) (citation and quotation marks omitted). Here, there are no factual allegations that could be construed as a claim that

these Defendants utilized the prosecution against Plaintiff for any illegitimate purpose.  *Cf.*

*Dunne v. Township of Springfield*, 500 F. App'x 136 (3d Cir. 2012) (finding record was "utterly

devoid" of allegations or evidence of improper or abusive purpose).

Rather, this Court construes Plaintiff's allegations of abuse of process and false

imprisonment as a claim of false disciplinary charges.  Plaintiff alleges that Defendants Giglio,

Maxfield, Herrmann, O'Neill and Fuller placed him in isolation at the Courthouse, handcuffed

and shackled him, and brought false disciplinary charges against Plaintiff to cover up their

excessive conduct towards Plaintiff.   However, the filing of false disciplinary charges, as

Plaintiff appears to assert here, does not constitute a claim under § 1983 as long as Plaintiff was

granted a hearing and an opportunity to rebut the charges.  *See Smith v. Mensinger*, 293 F.3d

641, 653-54 (3d Cir. 2002); *see also Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012).

Plaintiff also includes Defendants Warden Nadrowski, Captain Althouse, Sgt. Hausman

and Court Line officers #1 and #2 in this claim, alleging that they conducted a hearing and found

Plaintiff guilty of the disciplinary charges as part of a supposed cover-up of the incident

involving the Sheriff Officers.  Plaintiff admits the court line officers reviewed a video-tape of

the incident, which the officers said showed Plaintiff committed the acts charged.  Plaintiff also

admits that he contested the charges in general, and on procedural grounds (namely, he contested

the length of notice and the fact that the incident took place off jail premises), and that he

appealed the findings.

Pretrial detainees like Plaintiff are protected from punishment without due process of law

under the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Bistrian*, 696

F.3d at 373-74.  Although pretrial detainees "do not forfeit all constitutional protections," it is

settled that "[t]he fact of confinement as well as the legitimate goals and policies of the penal

institution limit these retained constitutional rights." *Bell*, 441 U.S. at 545, 546.   However, "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates" and, "it may be that in certain circumstances [detainees] present a greater risk to jail security and order." *Id.* at 546 n. 28.   Jail officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security ." *Id.* at 547; *see also Florence v. Board off Chosen Freeholders of County of Burlington*, —— U.S. ——, ——, 132 S.Ct. 1510, 1515, 182 L.Ed.2d 566 (2012) ("Maintaining safety and order at [county jails] requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.").

The Third Circuit further elucidated the *Bell* standard and warned that punitive measures taken against pretrial detainees are violative of the Due Process Clause:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.... [I]f a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

*Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008).   Thus, "[a] pretrial detainee who is transferred to more restrictive housing for disciplinary infractions is entitled to the due process protections applicable to sentenced inmates." *Contant v. Sabol*, 431 Fed. App'x 177, 179 (3d Cir. 2011) (citing *Stevenson v. Carroll*, 495 F.3d 62, 70–71 (3d Cir. 2007) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974))).   Those protections include a prison disciplinary proceeding, which requires that the inmate: (1) appear before an impartial decision-making body; (2) be given not less than 24 hours written notice of the charges against him; (3) be afforded an opportunity to call witnesses and present documentary evidence; (4) be permitted assistance from an inmate

representative; and (5) receive a written decision explaining the decision-maker's conclusions. *See Crosby*, 465 F. App'x at 171–72 (citing *Wolff*, 418 U.S. at 561–71).

However, the Supreme Court also held that "an inmate's due process rights are not triggered [under *Wolff*] unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Crosby*, 465 F. App'x at 172 (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). In determining whether a protected liberty interest exists, the duration of the confinement and the conditions of that confinement are considered in relation to other prison conditions. *See Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)); *see also Cooper v. Diggs*, 423 F. App'x 162, 165 (3d Cir. 2011) ("The length of confinement is but one of the considerations in evaluating whether the restraint imposes such hardship; [i]n deciding whether a protected liberty interest exists under *Sandin*, we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions.") (emphasis in original) (internal quotation marks and citation omitted).

The Third Circuit has held that confinement in segregation for 15 months is not an atypical and significant hardship. *See Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) ("[E]xposure to the conditions of administrative custody for periods of as long as 15 months ... did not deprive [the inmate] of a liberty interest"). Thus, Plaintiff's 15–days in disciplinary detention alone did not deprive him of a protected liberty interest. *See Velasquez v. DiGuglielmo*, 516 F. App'x 91, 97 (3d Cir. 2013) ("four-month confinement in the [restricted housing unit] does not constitute an atypical or significant hardship"); *Smith v. Mensinger*, 293 F.3d at 654 (seven months in disciplinary confinement did not impose atypical and significant

19

hardship), cited in *Iwanicki v. Pennsylvania Dept. of Corr.*, --- F. App'x ----, 2014 WL 4197499, at *3 (3d Cir. Aug. 26, 2014)..

In this Complaint, Plaintiff alleges only that he was wrongfully placed in disciplinary detention for 15 days. He does not allege any facts to show atypical and significant hardships during his 15-day disciplinary detention. Moreover, Plaintiff admits that he was afforded procedural due process as he was given a hearing and an opportunity to challenge the disciplinary charges, and appeal the disciplinary finding and sanction. Therefore, because Plaintiff fails to establish that he was deprived of a protected liberty interest, his due process deprivation of liberty claim necessarily fails and will be dismissed with prejudice with regard to all named Defendants.

### E.  Denial of Medical Care Claim

Plaintiff next asserts that he was denied medical care for his back injury in violation of his civil rights. As a pretrial detainee at the time of the alleged incident, Plaintiff's claim is examined under the Fourteenth Amendment's Due Process Clause. *Bistrian*, 696 F.3d at 367.

> In assessing the denial of medical care to a pretrial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). That inquiry involves an indirect application of the Eighth Amendment deliberate indifference standard: "the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections."

*King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983))) (other citations omitted). With respect to alleging a constitutional claim for denial of medical care, the Third Circuit has stated the following:

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam). The Third Circuit has also noted that deliberate indifference can be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted).

Moreover, for liability to attach under § 1983, Plaintiff "must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, 532 F. App'x 78, 81 (3d Cir. 2013) (per curiam) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted). *But see Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 324 (3d Cir. 2014) (holding that supervisor liability can be imposed in a § 1983 action where the supervisory official has "fail[ed] to correct known deficiencies in the provision of medical care to the inmate population," and

noting that it is irrelevant [t]hat the [supervisory] official had no specific knowledge of any particular inmate or the failure of subordinate officials to treat that inmate's serious medical condition").

Plaintiff asserts this denial of medical care claim against Defendants, Monmouth County Sheriff's Office, Monmouth County Jail, Monmouth County E.M.T. Service, Correct Care Solutions Medical providers, as well as Sheriff Officers Maxfield, Herrmann, Giglio, O'Neill and Fuller, Warden Nadrowski, Captain Althouse, Sgt. Hausman, E.M.T. Technicians #1 and #2, Dr. Hashmi, and Nurse "C.J." First, the Complaint is dismissed with prejudice for failure to state a claim with regard to Defendant Monmouth County Jail because the jail is not a "person" subject to suit under § 1983. *See Parrish v. Ocean Cnty. Jail*, No. 13–2020, 2013 WL 5554687, at *2 (D.N.J. Sept. 20, 2013) (finding that Ocean County Jail is not a person subject to suit under 42 U.S.C. § 1983) (citations omitted); *Ross v. Burlington Cnty. Jail*, No. 12–338, 2013 WL 3514191, at *2 (D.N.J. July 11, 2013) (dismissing claims against jail with prejudice as it is not a person subject to § 1983 liability) (citations omitted); *Ruiz v. Stills*, No. 09–34259, 2012 WL 762166, at *4 (D.N.J. Mar.7, 2012) (dismissing Cumberland County Jail from lawsuit because it is not a person subject to § 1983 liability) (citations omitted).

Further, the Complaint is dismissed with prejudice for failure to state a claim as to Defendants Monmouth County E.M.T. Service and E.M.T. Technicians, Drew Lumbar and Shawn Sprance. Plaintiff alleges that the technicians arrived and treated Plaintiff for his injuries, but declined to transport Plaintiff to the hospital upon the direction of the Sheriff Officers that Plaintiff would be taken for treatment at the medical department in Monmouth County Jail. The Complaint alleges no facts to show that the E.M.T. Defendants failed to provide medical care in the scope of their training, or that they deliberately denied medical treatment to Plaintiff. At

22

best, Plaintiff's allegations show that he was dissatisfied with the decision not to transport Plaintiff to the hospital. This claim does not rise to the level of a federal constitutional deprivation because the allegations merely insinuate a claim of negligence, which is not actionable in a § 1983 claim. *See Pierce*, 520 F. App'x at 66. Therefore, the Complaint is dismissed as to these E.M.T. Defendants.

Plaintiff's allegations against Dr. Hashmi and Nurse C.J., and the Correct Care Solution Medical providers, also fail to state a claim for denial of medical care. Again, Plaintiff alleges that these Defendants examined and treated Plaintiff, by prescribing pain medication and observing Plaintiff during his stay in the infirmary. However, Plaintiff complains that Dr. Hashmi declined to send Plaintiff to the hospital for an x-ray or an MRI or to send Plaintiff to a back specialist as Plaintiff requested. This allegation states nothing more than Plaintiff's disagreement with the medical professionals' decision regarding the course of treatment based on their clinical observation of Plaintiff. As stated above, this is not a basis for a § 1983 denial of medical care claim.[3]

Plaintiff next appears to allege that Defendants Warden Nadrowski, Captain Althouse, and Sgt. Hausman became aware of the fact that he was not receiving the necessary medical care for his back injury through written and verbal remedy requests that he made to these

---

[3] This Court notes that Plaintiff submitted copies of several letters he wrote to Dr. Hashmi, which acknowledge that Plaintiff had been sent to the hospital for an MRI on January 14, 2014. This MRI was cancelled because the neurologist was concerned about the presence of metal in Plaintiff's back from his prior back surgery. Instead, Plaintiff was sent for a CT-scan on February 14, 2014. (ECF Nos. 3, 4.) The letters also appear to acknowledge that the CT-scan adequately disclosed that Plaintiff had a couple of herniated discs, and that Dr. Hashmi was treating Plaintiff conservatively for his pain with a prescription for Elavil because a second surgery on Plaintiff's back was contraindicated. (ECF Nos. 5, 7-1, 8.) Consequently, these acknowledgements of treatment and a diagnostic test received serve to refute Plaintiff's claim that he was denied medical care. Instead, the letters show that Plaintiff is merely unhappy with the prescribed course of treatment offered by Dr. Hashmi.

administrative officials at Monmouth County Jail.  Typically, a plaintiff appealing grievances to the prison administrator is not enough to impute knowledge against the prison administrator of the wrongdoing.  *See Croom v. Wagner*, No. 06–1431, 2006 WL 2619794, at *4 (E.D.Pa. Sept.11, 2006) (finding that the filing of a grievance or an appeal of a grievance to the warden was insufficient to impose knowledge of any wrongdoing) (citing *Rode*, 845 F.2d at 1208; *Pressley v. Blaine*, No. 01–2468, 2006 U.S. Dist. LEXIS 30151, at *17 (W.D.Pa. May 17, 2006) (citing *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D.Pa. 1983))); *see also Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (per curiam) (holding that § 1983 liability cannot be found solely on the basis of *respondeat superior* where the allegations against the supervisory defendants related merely to their involvement in the post-incident grievance process.) (internal citation omitted).  In this case, Plaintiff's allegations concerning an alleged denial of medical care are based solely on the grievances Plaintiff filed with these administrative officials a mere two to three days after the alleged injury.  There are no allegations of an ongoing violation for a long period of time sufficient to show personal involvement and impose liability under § 1983.  *See, e.g., Cardona v. Warden – MDC Facility*, No. 12-7161 (RBK), 2013 WL 6446999, *5 (D.N.J. Dec. 6, 2013) (finding that the warden's awareness through plaintiff's filing of grievances pertaining to an ongoing denial of treatment for more than one year was sufficient to state a plausible claim against the warden).  Therefore, this claim asserting denial of medical care is dismissed without prejudice as against Defendants Warden Nadrowski, Captain Althouse, and Sgt. Hausman for failure to state a claim at this time.

Finally, Plaintiff alleges that Defendants Monmouth County Sheriff's Office and Sheriff Officers Maxfield, Herrmann, Giglio, O'Neill and Fuller violated his constitutional rights by denying medical care after Plaintiff was injured.  Principally, Plaintiff alleges that the Defendant

Officers waited some time before calling the E.M.T. service, and then refused to allow Plaintiff to be taken to the hospital as allegedly recommended by the E.M.T. Technicians.  However, the allegations show that the E.M.T. service was called shortly after the incident, about 20 minutes after Plaintiff was taken to the isolation unit at the Courthouse.   (ECF No. 1, Compl. at ¶¶ 40, 41.)  Further, once the E.M.T. Technicians arrived, Plaintiff was taken to the infirmary at the Monmouth County Jail where he received medical attention for his back injury.  Consequently, Plaintiff's allegations do not show that his complaints of injury were ignored, but rather, the medical care provided was not to Plaintiff's liking.  Therefore, Plaintiff's denial of medical care claim is dismissed as against these Defendants for failure to state a cognizable claim of a constitutional deprivation.

F.  Claims Asserting Liability Under Doctrine of Respondeat Superior

Finally, Plaintiff generally alleges that Defendants Monmouth County Sheriff's Office, Monmouth County Jail, Monmouth County E.M.T. Service, and the Correct Care Solution medical providers are liable for the negligent acts and wrongful conduct of the individual Defendants under a theory of *respondeat superior*.   With regard to Defendants Monmouth County E.M.T. Service, and Correct Care Solution, the Complaint must be dismissed without prejudice because Plaintiff has failed to state a claim at this time concerning an unconstitutional denial of medical care.   *See* this Opinion, *supra*, at 19-23.   Indeed, in the absence of a constitutional violation, there can be no municipal liability under § 1983.  *See Mulholland v. County of Berks,* 706 F.3d 227, 238 n. 15 (3d Cir. 2013) (finding that "if a municipal employee inflicted no constitutional injury, it is inconceivable that the municipality could be liable") (internal quotations and citations omitted); *Brown v. Pa. Dept. of Health Emergency Med. Servs. Training Inst.,* 318 F.3d 473, 482 (3d Cir. 2003) ("for there to be municipal liability, there still

must be a violation of the plaintiff's constitutional rights"). Further, as stated above, the Complaint is dismissed with prejudice as to Defendant Monmouth County Jail because the jail is not a "person" subject to suit under § 1983. *See Parrish*, 2013 WL 5554687, at *2.

Plaintiff also alleges that Defendant Monmouth County Sheriff's Office is liable for the actions of Defendant Officers Maxfield and Herrmann regarding their use of excessive and unreasonable force against Plaintiff.[4] Plaintiff generally alleges that the Monmouth County Sheriff's Office permitted and tolerated a pattern and practice of unreasonable use of force by Sheriff's Officers by maintaining a cursory and untimely investigation and system of review of the officers' conduct that enabled the officers to use excessive and unreasonable force without repercussion. (ECF No. 1, Compl., ¶¶ 108-110.) Plaintiff also alleges that the Monmouth County Sheriff's Office failed to provide adequate training and supervision to its officers, demonstrating a "willful and wanton indifference and deliberate disregard for human rights and the rights of individuals." (Id., ¶ 145.)

A municipality may be held liable under 42 U.S.C. § 1983 "'only ... when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.'" *Mulholland*, 706 F.3d at 237 (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). *See also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a municipality is liable under § 1983 only when "execution of a government's policy or custom, whether made by its

---

[4] Plaintiff also asserts that the Monmouth County Sheriff's Office is liable under the theory of *respondeat superior* with respect to Plaintiff's claims that he was denied medical care by the Sheriff Officers. As this Court has determined that Plaintiff fails to state a cognizable denial of medical care claim at this time, there can be no municipal liability under § 1983, and the claim must be dismissed without prejudice as to the Monmouth County Sheriff's Office accordingly. *See Brown*, 318 F.3d at 482.

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury"). For Plaintiff to establish the liability of the Monmouth County Sheriff's Office for either an unconstitutional policy or custom, "[i]t is clear ... [that he] 'must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.'" *Watson v. Abington Twp* ., 478 F.3d 144, 156 (3d Cir. 2007) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Where the policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("Canton")). Additionally, "the identified deficiency in [the government entity's] training program must be closely related to the ultimate injury;" or in other words, "the deficiency in training [must have] actually caused" the constitutional violation. *Canton*, 489 U.S. at 391.

Ordinarily, "[a] pattern of similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, —— U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and "[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal

liability." *Thomas*, 749 F.3d at 223 (quoting *Bd. Of Cnty, Comm'rs of Bryan Cnty., Okl. v.*
*Brown*, 520 U.S. 397, 407 (1997)).

Furthermore, a municipality's failure to train or supervise police officers only gives rise
to a constitutional violation when that failure amounts to deliberate indifference to the rights of
persons with whom the police come into contact. *See Jewell v. Ridley Twp.*, 497 F. App'x 182,
186 (3d Cir. 2012) ("A municipality may be liable for its failure to supervise only if it reflects a
policy of deliberate indifference to constitutional rights."); *see also City of Canton, Ohio v.*
*Harris*, 489 U.S. 378, 388 (1989). In this context, the Third Circuit has recognized that a failure
to train, discipline or control can only form the basis for § 1983 municipal liability if the plaintiff
can show both contemporaneous knowledge of the offending incident or knowledge of a prior
pattern of similar incidents and circumstances under which the supervisor's actions or inaction
could be found to have communicated a message of approval to the offending subordinate. *See*
*Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997). Importantly, a mere
showing (1) of the shortcomings of an individual; (2) that an otherwise sound training program
occasionally was negligently administered; or (3) without more, that better training would have
enabled an officer to avoid the injury-causing conduct, does not rise to the level of deliberate
indifference. *See Badillo v. Amato*, No. 13-1553 (FLW), 2014 WL 314727, * 9 (D.N.J. Jan. 28,
2014) (citing *Simmons v. Philadelphia*, 947 F.2d 1042, 1060 (3d Cir. 1991); *L.S. v. Mount Olive*
*Bd. of Educ.*, 765 F.Supp.2d 648, 660 (D.N.J. 2011)).

Here, Plaintiff has not pled any custom or policy which caused the alleged violation of
his rights. He also has not alleged facts related to the inadequacy of any training program,
system of review or investigation as to the conduct of the sheriff officers. More importantly,
Plaintiff has not alleged any conduct by the Monmouth County Sheriff's Office that would be

deemed as deliberately indifferent to Plaintiff's constitutional rights.   In short, Plaintiff has alleged no facts to show that Defendant was responsible for establishing policies with respect to the Sheriff Officers' use of excessive force, nor any evidence connecting Defendant to the alleged constitutional violations by the Defendant Sheriff Officers.   Rather, Plaintiff merely recites conclusory statements of law that Defendant "permitted and tolerated a pattern and practice of unreasonable use of force by Sheriff Officers," (Compl., ¶ 108), and that Defendant's failure to provide adequate training and supervision constituted "a willful and wanton indifference and deliberate disregard for" the rights of Plaintiff.  (*Id.*, ¶ 145.)    This pleading is insufficient under *Iqbal*, which prohibits the pleading of threadbare allegations couched in a conclusory manner with the hope of uncovering more facts during discovery.  *See Iqbal*, 556 U.S. at 678-79.   Accordingly, the Complaint is dismissed without prejudice at this time for failure to state a cognizable claim for relief as against Defendant Monmouth County Sheriff's Office.

## V.  CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety, as against Defendant Monmouth County Jail, for failure to state a claim because the jail is not a "person" subject to suit under § 1983.  Plaintiff's claims alleging intentional infliction of emotional distress, conspiracy, and denial of medical care are dismissed without prejudice, as against all named Defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Further, Plaintiff's claim alleging abuse of process and false imprisonment (construed as a claim of false disciplinary charge and sanction) is dismissed with prejudice as against all named Defendants, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Plaintiff's claims against Defendants Monmouth County

Sheriff's Office, Monmouth County E.M.T. Service, and the Correct Care Solution medical providers, which are based solely on a theory of *respondeat superior*, are dismissed without prejudice for failure to state a claim at this time.   However, Plaintiff's claim against Sheriff Officers Leonard Maxfield and D. Herrmann, alleging the use of unreasonable and excessive force in violation of Plaintiff's Fourteenth Amendment due process rights, shall be allowed to proceed at this time.   The Court exercises supplemental jurisdiction over Plaintiff's common law claims of assault and battery and negligence, asserted against Defendants Maxfield and Herrmann, because the claims are related to the excessive force claim.   *See* 28 U.S.C. § 1367(a). An appropriate order follows.

MICHAEL A. SHIPP
United States District Judge

Dated: 2/5/15

30